EL PUEBLO DE PUERTO RICO, peticionario, *v.* FÉLIX SANTOS
VEGA, ETC., acusados y recurridos.

*Número:* O-84-54          *Resuelto:* 26 de noviembre de 1984

*Miguel Pagán, Subprocurador General,* y *Doris Zoé Pons Pagán, Procuradora General Auxiliar,* abogados de El Pueblo, peticionario; *Vicente López Pérez,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Varios agentes de la División del Control del Vicio de la Policía visitaron diversos teatros de la zona metropolitana en fechas diferentes. Investigaban la exhibición de películas o espectáculos obscenos en violación del Art. 114 del Código

Penal, 33 L.P.R.A. sec. 4076. (¹) El procedimiento seguido en unas dieciséis ocasiones fue el siguiente. El agente compraba un boleto y observaba el espectáculo. Luego acudía ante un magistrado de la Sala de Investigaciones y prestaba una declaración jurada en la que describía detalladamente lo visto. Basado exclusivamente en tal declaración, el magistrado expedía *ex parte* una orden de registro y allanamiento en que se especificaba el sitio a registrarse y los objetos a ser ocupados. Armados con las órdenes los agentes allanaron los teatros y se apoderaron de varias copias de cada película designada en las órdenes. El Ministerio Público no ha cuestionado la alegación de los imputados al efecto de que se les privó de todas las copias disponibles.

Como consecuencia de los procedimientos descritos el Ministerio Fiscal presentó ante el Tribunal de Distrito una serie de denuncias por alegadas violaciones al Art. 114 del Código Penal. Los imputados solicitaron la supresión y devolución de la evidencia ocupada. El tribunal concluyó que la incautación de una película constituye una censura previa inaceptable constitucionalmente, a menos que ocurra después de celebrarse una vista adversativa sobre la cuestión de obscenidad. El tribunal determinó también que no puede privarse a los exhibidores de las únicas copias que posean de las películas con el propósito de impedir su distribución o exhibición.

Inconforme con el fallo, el Ministerio Público presentó una solicitud de *certiorari* ante el Tribunal Superior, el cual la denegó. Acudió en alzada a este foro y, dado la novedad

---

(¹) El Art. 114 dispone:

"Toda persona que a sabiendas se dedique a, o participe en administrar, producir, patrocinar, presentar o exhibir un espectáculo que contenga conducta obscena o participe [e]n una parte de dicho espectáculo, o que contribuya a su obscenidad, será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal. Se entenderá por espectáculo la ejecución de cualquier obra teatral, cinta cinematográfica, baile o cualquier otra exhibición dirigida a una audiencia."

del asunto en esta jurisdicción y su importancia, acordamos revisar.

No está ante nuestra consideración cuestión alguna referente a si las películas incautadas son o no obscenas. La única cuestión a resolver es si el procedimiento utilizado aquí para la incautación de películas alegadamente obscenas cumple con las garantías estatales del debido proceso de ley, la libertad de expresión y la protección contra incautaciones irrazonables.

■ El derecho a la libre expresión no es irrestricto. Puede condicionarse cuando intereses públicos apremiantes lo requieran. *Aponte Martínez* v. *Lugo*, 100 D.P.R. 282, 290 (1971); *Mari Bras* v. *Casañas*, 96 D.P.R. 15, 21 (1968). Hemos establecido, no obstante, que al condicionar tal derecho, "[d]eben considerarse las alternativas que tiene el poder gubernamental para alcanzar el objetivo de su limitación de la manera que menos lesione el derecho de expresión . . .". *Rodríguez* v. *Srio. de Instrucción*, 109 D.P.R. 251, 256 (1979).

■ Las películas, los libros, las revistas y otras publicaciones, por ser formas de expresión, están protegidos por las garantías de la Sec. 4 del Art. II de la Constitución de Puerto Rico. Por tal razón, la incautación de una película no puede tratarse de la misma forma que la incautación de armas, drogas, comida adulterada, propiedad robada o evidencia de otros delitos. Véase *Lo-Ji Sales, Inc.* v. *New York*, 442 U.S. 319 (1979). Las películas y objetos análogos no pueden ser incautados sin que medie una orden judicial constitucionalmente válida. Lo contrario constituiría censura previa. *Roaden* v. *Kentucky*, 413 U.S. 496 (1973).[2] En vista de los problemas de libertad de expresión envueltos, se exige

---

[2] El Art. 117A del Código Penal, 33 L.P.R.A. sec. 4080, dispone respecto a la incautación de material obsceno:

"El Secretario de Justicia, el Superintendente de la Policía o el Secretario de Hacienda por conducto de sus delegados o agentes del orden público, podrá incautarse de toda propiedad o interés que cualquier persona haya adquirido en violación a las disposiciones de las secs. 4075 a 4079 de este título, siguiendo el proce-

un estándar más riguroso para la determinación de causa probable al solicitarse una orden de allanamiento e incautación en casos de obscenidad. *United States* v. *Santiago*, 424 F.2d 1047, 1048 (1st Cir. 1970); A. L. Burnett, *Obscenity: Search and Seizure and the First Amendment*, 51 Den. L.J. 41, 66 (1974). Los estados pueden reglamentar la exhibición de material obsceno en sitios públicos, mas la reglamentación que adopten deberá contener procedimientos que no coarten indebidamente la libertad de expresión. *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 66 (1963); *Marcus* v. *Search Warrant*, 367 U.S. 717 (1961).

▪ Una orden de registro, allanamiento o incautación debe basarse en información tan detallada que le permita al magistrado formar un juicio independiente sobre la obsce-

---

dimiento establecido por las secs. 1721 y 1722 del Título 34 conocidas como 'Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones'."

Por su parte, el Art. 2 de la referida ley, Ley Núm. 39 de 4 de junio de 1960, según enmendado por la Ley Núm. 123 de 30 de junio de 1975, 34 L.P.R.A. sec. 1722, provee en su inciso (a):

"El procedimiento se iniciará mediante la ocupación de la propiedad por el Secretario de Justicia, el Secretario de Hacienda, o el Superintendente de la Policía, por conducto de sus delegados, policías o agentes de orden público. El funcionario bajo cuya autoridad se actúe notificará al dueño, encargado o persona con derecho o interés conocido en la propiedad ocupada, de la ocupación y tasación de los bienes ocupados; debiendo efectuarse la notificación en forma fehaciente, dentro de los diez (10) días siguientes a la ocupación; entendiéndose perfeccionada la notificación mediante su envío por correo con acuse de recibo. Los dueños, encargados o interesados en los bienes ocupados podrán impugnar la confiscación dentro de los quince (15) días siguientes a la fecha de la notificación, mediante demanda contra el funcionario bajo cuya autoridad se haya efectuado la confiscación, a quien se notificará y quien deberá formular sus alegaciones dentro de los diez (10) días siguientes a la notificación. La demanda deberá radicarse en la Sala del Tribunal Superior de Puerto Rico, correspondiente al lugar donde se efectuó la ocupación, y el juicio se celebrará sin sujeción a calendario. Las cuestiones que se susciten deberán resolverse, y los demás procedimientos tramitarse de la misma manera que si se tratase de una acción civil ordinaria. Contra la sentencia que recaiga no habrá otro recurso que el de *certiorari* para al [*sic*] Tribunal Supremo, limitado a cuestiones de derecho. La radicación de la demanda de impugnación dentro del término aquí establecido se considerará requisito jurisdiccional previo para el ejercicio de la acción aquí autorizada."

Valga apuntar que la Policía en este caso no utilizó el procedimiento que especifica la ley citada, quizás por prudente respeto a *Roaden* v. *Kentucky*, 413 U.S. 496 (1973).

nidad del material. *Lee Art Theatre* v. *Virginia*, 392 U.S. 636 (1968). El magistrado debe velar también por que la declaración satisfaga las guías impuestas a los estados en *Miller* v. *California*, 413 U.S. 15 (1973), para determinar si el material es obsceno o no. *Marcus* v. *Search Warrant*, supra, págs. 731–732. La incautación en masa del material obsceno, mediante la cual se priva al exhibidor de todas sus copias o de un gran número de ellas, es excesiva e impermisible. Basta con la incautación de una copia de cada título para preservar la evidencia. *A Quantity of Books* v. *Kansas*, 378 U.S. 205 (1964); *Heller* v. *New York*, 413 U.S. 483 (1973); Burnett, *op. cit.*, págs. 56, 70; *Overstock Book Company* v. *Barry*, 436 F.2d 1289 (2nd Cir. 1970).

Hasta aquí hemos consignado principalmente algunas normas expuestas por el Tribunal Supremo de Estados Unidos que, por fijar el contenido mínimo en este campo del derecho a la libre expresión, a la protección contra incautaciones irrazonables y al debido proceso de ley, rigen la interpretación de las Secs. 4, 7 y 10 del Art. II de la Constitución del Estado Libre Asociado, aunque sin agotar su ámbito. Restan por mencionar otros aspectos de interés en este género de casos sobre los cuales existe diversidad de criterios.

El primero, discutido en instancia, plantea la cuestión de si la celebración de una vista adversativa previa a la incautación del material alegadamente obsceno es constitucionalmente indispensable. Varios tribunales estiman que no puede emitirse nunca una orden de incautación sin la celebración de una vista adversativa previa sobre la alegada obscenidad del material a obtenerse. *Bethview Amusement Corp.* v. *Cahn*, 416 F.2d 410 (2nd Cir. 1969); *Astro Cinema Corp. Inc.* v. *Mackell*, 422 F.2d 293 (2nd Cir. 1970); *Perial Amusement Corp.* v. *Morse*, 482 F.2d 515 (2nd Cir. 1973); *Tyrone, Inc.* v. *Wilkinson*, 410 F.2d 639 (4th Cir. 1969), *cert.* denegado, 396 U.S. 985 (1969); *People ex rel. McKevitt* v. *Harvey*, 491 P.2d 563 (Colo. 1971); *State* v. *Alexander*, 281

N.W.2d 349 (Minn. 1979); *State* v. *Walters*, 440 So. 2d 115 (La. 1983).

Otros no requieren la vista adversativa previa si la incautación se da en virtud de una orden judicial con el propósito de preservar la evidencia y no de impedir la exhibición o distribución del material obsceno y si se provee una vista adversativa con prontitud después de la incautación. *United States* v. *Sherpix, Inc.*, 512 F.2d 1361 (D.C. 1975); *State* v. *Bumanglag*, 634 P.2d 80 (Hawaii 1981); *State* v. *Eros Cinema, Inc.*, 264 So. 2d 615 (La. 1972). Véanse, sobre las diversas teorías al respecto: Nota, *Prior Adversary Hearings on the Question of Obscenity*, 70 Colum. L. Rev. 1403 (1970); Nota, *The Prior Adversary Hearing: Solution to Procedural Due Process Problems in Obscenity Seizures?*, 46 N.Y.U. L. Rev. 80 (1971).

No es necesario explorar todas las ramificaciones de esta controversia, pues hay acuerdo sobre ciertas proposiciones básicas. En *Heller* v. *New York*, supra, el Tribunal Supremo de Estados Unidos rehusó imponerles a los estados el requisito de celebrar una vista adversativa antes de la expedición de una orden para la incautación, para su utilización como prueba, de una sola copia de una cinta cinematográfica, cuando ello no conllevó la descontinuación del espectáculo, y además se dispuso una vista adversativa dentro de las cuarenta y ocho horas siguientes. *Heller* v. *New York*, supra, reafirmó, no obstante, las decisiones en *Marcus* v. *Search Warrant*, supra, y *A Quantity of Books* v. *Kansas*, supra, de requerir tal vista para la incautación con otros fines de una cantidad de libros. *Heller*, supra, reiteró también la norma de *United States* v. *Thirty-seven Photographs*, 402 U.S. 363 (1971) y *Freedman* v. *Maryland*, 380 U.S. 51 (1965), al efecto de que no puede imponerse ninguna restricción final a materiales alegadamente obscenos sin una vista adversativa previa. También se señaló en *Heller*, supra, que cuando se trate de la incautación de un solo ejemplar de una cinta cinematográfica se deberá permitir copiarla, si es necesario,

para asegurar su exhibición continuada durante los procedimientos legales.

Un último aspecto trata sobre si es constitucionalmente necesario que el juez vea la película antes de determinar causa probable para expedir la orden de incautación. El Tribunal Supremo de Estados Unidos no se ha expresado sobre el particular, *Lee Art Theatre* v. *Virginia,* supra, mas la abrumadora mayoría de los tribunales federales y estatales han resuelto que no es necesario, siempre que la declaración jurada contenga una descripción detallada de la película, con hechos suficientes y no con meras conclusiones, que permitan pasar juicio sobre la existencia o no de causa probable. *Sovereign News Co.* v. *United States,* 690 F.2d 569, 572–573 (6th Cir. 1982); *United States* v. *Espinoza,* 641 F.2d 153, 162–164 (4th Cir. 1981), *cert.* denegado, 454 U.S. 841 (1981); *United States* v. *Thomas,* 613 F.2d 787, 790 (10th Cir. 1980), *cert.* denegado, 449 U.S. 888 (1980); *People* v. *Foote,* 432 N.E.2d 1254, 1256 (Ill. 1982); *Century Theaters, Inc.* v. *State,* 625 S.W.2d 511, 514 (Ark. 1981). Contra: *Imperial Distributors, Inc.* v. *United States,* 473 F. Supp. 294 (D. Mass. 1979); *Hess* v. *State,* 536 P.2d 366 (Okla. 1975). Adoptamos la posición mayoritaria. Sobre las dificultades que plantea la adopción de la posición minoritaria, véase: Burnett, *op. cit.,* págs. 71–72.

■ En resumen, resolvemos que en este género de casos regirán las siguientes normas mínimas bajo la Constitución del Estado Libre Asociado de Puerto Rico:

1. Las películas, los libros y otras publicaciones no pueden ser objeto de incautación, a menos que medie una orden al efecto expedida por un magistrado neutral después de determinar causa probable sobre la obscenidad del material a ser incautado.

2. El estándar para la determinación de causa probable es más riguroso que en casos que no envuelven la libertad de expresión. La declaración jurada en que se funde debe ser tan pormenorizada que permita la formación de un juicio

independiente sobre la obscenidad de la cinta a incautarse y el cumplimiento con las guías establecidas en *Miller* v. *California,* supra.

3. No es necesario que el juez vea la película para que pueda determinar causa probable.

4. La película no puede sujetarse sin vista adversativa previa a ninguna restricción final, como, por ejemplo, la de prohibir su exhibición u ordenar su destrucción.

5. No será permisible, sin vista adversativa previa, incautarse de más de un ejemplar de cada cinta designada en la orden, lo suficiente para preservar la evidencia. De contarse con un solo ejemplar en el sitio de exhibición no será permisible su incautación por un período irrazonable sin oportunidad al poseedor o dueño de copiar la cinta u obtener otra. En el caso del ejemplar único, la cinta podrá depositarse en el tribunal, con notificación al poseedor, para que éste la copie o haga las gestiones para obtener otra copia. La justificación para este procedimiento es que su propósito será la preservación de la misma como prueba y no la censura previa del espectáculo.

6. Podrá prescindirse de la vista adversativa previa cuando se le demuestre al juez antes de emitir la orden que la incautación no resultará en la interrupción del espectáculo, por poseer el dueño o presentador más copias de la cinta a incautarse o por ofrecérsele oportunidad de copiar la única que tenga u obtener otra, y cuando la orden en sí provea para la celebración de una vista adversativa a la brevedad posible después de la incautación. En el albur de que se cuente con sólo una copia, el juez podrá disponer, incluso en la propia orden de registro, cualesquiera otras medidas preventivas necesarias para conservar la cinta en su estado original.

7. El propósito de la orden de registro, allanamiento o incautación no podrá ser evitar que se exhiba la película.

En el caso de autos, basta con señalar que el propósito de la incautación fue impedir la exhibición de las películas y no

preservarlas como evidencia. Tampoco medió una vista adversativa previa ni se proveyó para la celebración de una vista de tal género para poco después de la incautación. Tales actos de por sí representaron en las circunstancias de este litigio una violación de las Secs. 4, 7 y 10 del Art. II de la Constitución del Estado Libre Asociado.

Por las consideraciones expuestas, *se confirmará la resolución recurrida.*

El Juez Asociado Señor Rebollo López disiente y se reserva el derecho de emitir una opinión a esos efectos.