Colón Birriel, Juez Ponente
*662 TEXTO COMPLETO DE LA RESOLUCION
La recurrente Felisa Ramírez Rosa ("Ramírez"), nos solicita la revisión de una resolución emitida por la Junta de Apelaciones del Sistema de Educación ("JASED") el 4 de septiembre de 1996, notificada de su archivo en autos el 5 de septiembre de 1996. Mediante dicho dictamen, JASED declaró No Ha Lugar a una apelación que presentara Ramírez, confirmando, de este modo, la determinación del Departamento de Educación ("Departamento") de notificarle a Ramírez una amonestación escrita, que pasaría a formar parte de su expediente de personal en el Departamento, por razón de una comunicación que ésta le enviara al Secretario del Departamento ("Secretario"), conteniendo expresiones poco respetuosas en tomo a este último. Denegamos.
n
El presente recurso de revisión trata sobre el derecho a la libertad de expresión de un empleado público. Es menester comenzar con un recuento breve de los hechos pertinentes, que motivaron la presentación del mismo.
El Secretario, mediante comunicación escrita fechada el 26 de octubre de 1995, dirigida a todo el personal clasificado del Departamento, informó la nueva política del Departamento para conceder aumentos salariales y reclasificaciones de puestos en ascenso. Se informó en la referida comunicación, que para esos fines, se había separado del presupuesto del Departamento la suma de diecisiete millones de dólares ($17,000,000.00). En el cuarto párrafo de la comunicación se indicó, además, que se habían aprobado todas las recomendaciones de reclasificaciones de puestos que habían llegado a su consideración, con las debidas evaluaciones que las respaldaban. Ramírez, quien trabaja en el Departamento ocupando un puesto de Oficinista Dactilógrafa II en el Distrito Escolar de Isabela, sin embargo y a pesar de haber sido recomendada, aparentemente no fue reclasificada en su puesto. Como consecuencia de ello, con fecha 31 de octubre de 1995, Ramírez le envió una comunicación al Secretario, la que copiada íntegramente lee como sigue:

"31 de octubre de 1995

Profesor Víctor Fajardo

Secretario Departamento de Educación

San Juan PR 00919

Profesor Fajardo:

Acabo de recibir su memorando enviado a todo el personal clasificado, en obvia respuesta a la protesta escenificada la pasada semana frente al DEP.

Llamó poderosamente mi atención la aseveración que hace usted en el cuarto párrafo y cito: "Simultáneamente, hemos aprobado todas las recomendaciones de reclasificación de puestos que han llegado hasta nuestra consideración con las debidas evaluaciones que las respaldan".

Luego entonces, ¿Quépasó con la petición de reclasificación de puesto que solicitaron los señores Juan E. Deliz y Antonio Rodríguez, Superintendente de Isabela y Director Regional de Arecibo respectivamente, para esta servidora el 21 de febrero de 1995?

¿A cuáles reclasificaciones se refiere? ¿A las recomendadas por los políticos y personal politiquero e 
*663
inescrupuloso que comandan los distritos, regiones educativas y el propio Nivel Central?

¿De qué justicia habla usted? No de la que yo conozco. No de la que una secretaria radica una querella en contra de su Directory lo "jubilan". De la que toda una Directora de la División Legal, soslaya sus deberes para evitar actuar en contra de los de arriba. De la que el Gobernador la premia nombrándola "Honorable Juez Rosa M. Rodríguez". De la justicia suya y de los subsecretarios que se niegan rotundamente a recibimos y en su lugar reciben personalmente y por teléfono a políticos en busca de favores especiales. De la justicia, donde una funcionaría (María Aldarondo) manda más que el Director (Antonio Rodríguez). Justicia de un gobierno viciado, cruel, inhumano y corrupto que exclusivamente brinda oportunidad de empleo, ascensos, etc., a los suyos, basándose en los resultados de su "censo". (Me refiero al censo del Partido Nuevo Progresista).

Secretario: Utilicé mi propio juicio y determiné quiénes son los oportunistas, quiénes incitan, quiénes confunden, quiénes quieren prevalecer. Descubrí que son toda esa RALEA que dejó Judas y Barrabás regada por el mundo y que son, en su inmensa mayoría, los miembros del gobierno de Pedro Roselló.

¡MALDITA SEA SU JUSTICIA!

Felisa Ramírez Rosa, Isabela, Puerto Rico

cf. Profesor Renán Soto, Presidente Federación de Maestros de Puerto Rico

Semanario CLARIDAD

Sr. Luis Francisco Ojeda, Periodista - WKAQ Radio

Sra. Carmen Jovet, Periodista - WKAQ Radio"

Entendiendo el Secretario que Ramírez en su comunicación, utilizó un lenguaje fuerte, además de haberle hecho serias imputaciones, procedió a enviarle una comunicación fechada 1ro. de febrero de 1996, en la que amonestó a Ramírez por el contenido de su comunicación. Entendió el Secretario, que Ramírez había incurrido en una violación a la Ley Núm. 115 de 30 de junio de 1965, según enmendada, 18 L.P.R.A. see. 274-2. Le informó a Ramírez, que la comunicación por él cursada, se haría formar parte de su expediente de personal, el que obra en la Secretaría de Recursos Humanos del Departamento. En su comunicación a Ramírez, el Secretario le informó además, de su derecho a apelar de su determinación ante la JASED, del término que tenía para ello, y de las consecuencias de no hacerlo.
El 12 de febrero de 1996, Ramírez presentó su apelación por derecho propio ante la JASED. El 15 de febrero de 1996 el Ledo. Angel Raúl Pérez Muñiz, asumió la representación de Ramírez ante ese organismo. El 8 de marzo de 1996, el Departamento contestó la apelación, señalándose conferencia sobre el estado de los procedimientos para el 1ro. de mayo de 1996. Se acordó someter memorandos de derecho simultáneos, luego de lo cual se señaló el caso para vista. El 17 de junio de 1996 las partes sometieron el caso por el expediente.
Así las cosas, el Oficial Examinador a cargo del caso, luego de haber efectuado sus determinaciones de hechos y conclusiones de derecho, recomendó a JASED el declarar No Ha Lugar la apelación y confirmar la determinación del Secretario, amonestando a Ramírez mediante carta. JASED adoptó las determinaciones de hechos y conclusiones de derecho contenidas en el Informe del Oficial Examinador, así también dicho informe, haciéndolos formar parte integral de la resolución que emitió el 4 de septiembre de 1996. En fin, mediante dicha resolución, JASED declaró No Ha Lugar la apelación y confirmó la determinación del Secretario. Inconforme con dicha resolución, Ramírez recurre ante nos alegando que JASED incurrió en el siguiente error:

"Erró la Honorable Junta al confirmar la acción disciplinaria contra la apelante-recurrente por ésta ejercer su derecho a la libertad de expresión".

m
No existen palabras buenas o malas per se. El lenguaje es un invento del hombre para facilitar la comunicación, no tan sólo de las ideas u opiniones, sino también de los sentimientos y, sobre todo, de las emociones. El lenguaje es puramente contextual. Es por eso que las decisiones judiciales en el campo de la *664 Primera Enmienda acusan una marcada preferencia por atender las circunstancias fácticas que rodean la expresión de la palabra, en vez del carácter de la palabra en sí. El significado y efecto de las palabras dependerá de quién las articula, de quién y porqué las escucha, de dónde, cuándo y cómo se profieren y, muy especialmente, de cuál es su propósito.
La libertad de expresión está consagrada por la Carta de Derechos del Estado Libre Asociado de Puerto Rico, la cuál está inspirada, a su vez, en la Primera Enmienda de la Constitución de los Estados Unidos. Esta representa el derecho constitucional de todo ciudadano de expresar libremente sus ideas en una sociedad pluralista sin restricción gubernamental en cuanto al contenido, forma y manera en que ésta se manifiesta. Nicolás Velázquez Pagán v. Autoridad Metropolitana de Autobuses, _ D.P.R. _, 92 J.T.S. 122. Nuestra disposición constitucional sobre el Particular dispone que:
"No se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y pedir al Gobierno la reparación de agravios". Constitución del Estado Libre Asociado de Puerto Rico, Artículo II Sección 4.
Bien es sabido, que este derecho constitucional es uno que goza de un alto rango dentro de los derechos individuales de las personas y que es parte integral del ejercicio pleno de la libertad de conciencia, de pensamiento y las actividades propias para ejercitar a plenitud, dentro de la más dilatada libertad, la totalidad de estos derechos. Nicolás Velázquez, supra. Es decir, se trata de un derecho que intenta proteger a los ciudadanos de aquella acción estatal que pueda coartar o coaccionar su derecho de expresar lo que piensan o sienten.
No obstante lo anterior, la libertad de expresión está sujeta a algunas restricciones y regulaciones. El ejercicio de este derecho debe hacerse en forma moralmente responsable. Aponte Martínez v. Lugo, 100 D.P.R. 282, 290 (1971). Es decir, aun cuando este derecho es uno de la más alta jerarquía constitucional, esto no supone su irrestricción absoluta, de forma tal que no pueda subordinarse a otros intereses cuando la necesidad y la conveniencia pública así lo requieran. De surgir un conflicto entre dicho derecho y la necesidad y conveniencia pública de subordinarlo a otros intereses, los tribunales decidirán tomando en consideración las circunstancias particulares en cada caso específico. Véanse a estos efectos: Mari Bras v. Casañas, 96 D.P.R. 15, 21 (1968); Sánchez Carambot v. Dir. Col. Univ. de Humacao, 113 D.P.R. 153 (1982); Rodríguez v. Srio. de Instrucción, 109 D.P.R. 251 (1979); Fraticelli v. Cintrón, 122 D.P.R. 229 (1988). Así pues, existen lugares que resultan impropios para ejercitar algunos modos de expresión. Los Tribunales, los hospitales, los templos y las escuelas son algunos de estos sitios. E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436, 443-444 (1975); Rodríguez v. Secretario de Instrucción, supra.
Ahora, el estado, al programar una convivencia social ordenada, debe tener mucho cuidado al establecer limitaciones al ejercicio del derecho a la libre expresión. Pueblo v. Santos Vega, 115 D.P.R. 818, 822 (1984). De este modo se ha resuelto que "las leyes que en alguna forman limitan el derecho constitucional de la libertad de expresión, deben ser interpretadas restrictivamente a fin de que esa limitación no traspase el límite de lo absolutamente necesario." Pueblo v. Burgos, 75 D.P.R. 551, 570 (1953); Mari Bras v. Casañas, supra; Rodríguez v. Srio. de Instrucción, supra. Al examinar los estatutos que limitan el ejercicio a la libre expresión, los tribunales han distinguido entre dos tipos de reglamentación: a) la que reglamenta el contenido de la expresión, y b) la que reglamenta el tiempo, lugar y manera de la misma. En el caso de autos, la reglamentación en cuestión envuelve ambos tipos.
rv
En el presente caso, Ramírez, como funcionaría del Departamento, mediante carta dirigida al Secretario de Educación, Víctor Fajardo, criticó a éste por alegadamente no haberla reclasificado luego de haber éste notificado a todo el personal del Departamento que había aprobado todas las reclasificaciones sometidas a su consideración. En la referida carta Ramírez hace uso de palabras y lenguaje fuerte y ofensivo, termina su comunicación diciendo: "Maldita sea su justicia". Además le hace serias imputaciones al Secretario, al decir que "éste es parte de un gobierno corrupto, cruel e inhumano"', imputaciones que atenían contra la moral, dignidad y honestidad de dicho funcionario. Por estas expresiones, entre otras, contenidas en la comunicación de Ramírez al Secretario, éste la amonestó y le imputó haber violentado el Artículo 3 de la Ley 115 de 30 de junio de 1965, *665 según enmendada, supra. Dicho artículo en su parte pertinente, dispone como sigue:

"274-2. Deberes de maestros o empleados

Los maestros o empleados del Sistema de Educación Pública tendrán entre otros los siguientes deberes y obligaciones:

(a).

(b) Observar normas de comportamiento correcto, cortés y respetuoso en sus relaciones con sus supervisores, compañeros de trabajo y ciudadanos.

Los maestros o empleados no podrán:

(a).

(b) Observar conducta incorrecta o lesiva al buen nombre del Departamento de Educación o al Gobierno de Puerto Rico."

Ramírez por su parte, alega que las expresiones dichas por ella, caen dentro de la protección constitucional por ser un ejercicio de su libertad de expresión. Entendemos que no tiene razón.
Como expusiéramos anteriormente, aunque es cierto que la libertad de expresión es un derecho de alto rango constitucional que permite a los ciudadanos poder decir lo que piensan y sienten, ello no quiere decir que sea un derecho absoluto e irrestringible, por lo que puede ceder cuando la necesidad o conveniencia pública así lo requieran.
No se trata de coartar la libertad de expresión'de Ramírez sino de regular la forma en que un empleado público debe dirigirse a su supervisor dentro de una agencia u organismo administrativo, en este caso, el Departamento. Indiscutiblemente esto adelanta el interés público de mantener un ambiente de paz y orden dentro del Departamento para el buen funcionamiento del mismo. El permitir que cualquier empleado o funcionario, dentro del Departamento de Educación, fuere verbal o por escrito, se dirija de forma irrespetuosa y ofensiva al Secretario o a cualquier otro supervisor, resultaría en una lesión o menoscabo a la moral pública del Departamento, así como a su administración y, por consiguiente, a su buen funcionamiento. Por otro lado, no existe la menor duda que el contenido de la comunicación y la forma en que Ramírez se dirige a su supervisor, el Secretario, no fue cortés, mucho menos respetuosa. La conducta observada por ésta posiblemente pudo haber constituido causa suficiente para una sanción más severa, conforme al artículo 2 de la Ley Núm. 115 antes citada, 18 L.P.R.A. sec. 274-1. pero el Secretario optó por la amonestación escrita.
El proceder de Ramírez, quizás pudo haberse permitido, como parte de su derecho constitucional a la libertad de palabra o de expresión, si la comunicación hubiese sido hecha en su capacidad de ciudadana particular ante otro foro, o si la referida comunicación se hubiera hecho bajo otras circunstancias como, por ejemplo, estando vigente una huelga, un piquete u otra forma de protesta legal; pero no podemos dejar pasar por alto, que cuando Ramírez hace la comunicación que le dirige al Secretario, es una empleada del Departamento, sujeta a las normas, leyes y reglamentos que gobiernan a dicho Departamento, teniendo deberes y obligaciones hacia éste, sus compañeros de labores, sus supervisores y otros. Véanse y compárense: Porto y Siurano v. Bentley P.R., Inc., 133 D.P.R. _ (1992), 92 J.T.S. 175; U.N.T.S. v. Srio. de Salud, 134 D.P.R. _ (1993), 93 J.T.S. 58. El contenido de la comunicación y la forma en que se dirigió a su máximo supervisor, el Secretario, dentro del esquema administrativo interno del Departamento fue si no ofensivo, irrespetuoso, menoscabando la autoridad de éste, por lo que procedía la amonestación. En adición, la amonestación por escrito, que como medida disciplinaria le formuló el Secretario a Ramírez, no es excesiva al compararse con la conducta observada por ésta. Es decir, existe un tiempo, lugar y forma determinada para llevar a cabo este tipo de expresión. Bajo las circunstancias del presente caso, el derecho a la libertad de palabra o de expresión, "no se hizo en la forma, tiempo ni lugar apropiado."
*666 Por los fundamentos antes expresados se deniega la expedición del auto solicitado.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 96 DTA164
1. El Departamento de Educación será dirigido por un Secretario quien ejercerá todas las funciones ejecutivas, administrativas, operacionales, de supervisión y planificación. 3 L.P.R.A. see. 391. (Enfasis suplido).
El Secretario será responsable de la organización, dirección, supervisión, planificación y evaluación de la actividad docente y administrativa del sistema de educación en todos sus niveles. Ejercerá todas las funciones ejecutivas y operacionales del Departamento, y tendrá entre otros poderes, deberes y facultades, el delegar en funcionarios subalternos y autorizar a éstos a subdelegar en otros funcionarios cualquier función o facultad que le sea asignada o conferida, excepto la de nombrar el personal y la de aprobar, enmendar y derogar reglas y reglamentos. 3 L.P.R.A. see. 396 (20). (Enfasis suplido).
Cada distrito escolar a los efectos de administrar el sistema de educación pública, Puerto Rico estará dividido en distritos escolares. Cada distrito escolar estará dirigido por un Superintendente de Escuelas, quien responderá directamente al Secretario. Entre sus funciones está la de planificar, organizar, dirigir, supervisar y evaluar toda la actividad educativa y administrativa en el distrito escolar. 3 L.P.R.A. sec. 395b(l). (Enfasis suplido).
Conforme a ese esquema de organización en el Departamento, el Secretario es el máximo supervisor de Ramírez. Ramírez en la cadena de mandos dentro del Departamento, le responde a otros inmediatos supervisores por delegación del Secretario, encontrándose entre éstos, el Superintendente del Distrito Escolar de Isabela, donde ella labora. El hecho de que por delegación del Secretario, Ramírez le responda al Superintendente, u a otros, ello no deja sin efecto el que el Secretario sea su máximo supervisor. (Enfasis suplido).
2. La referida disposición dispone como sigue:

"274-1. Medidas correctivas

Cuando la conducta de cualquier maestro o empleado del Sistema de Educación Pública violare las normas establecidas, por la ley o reglamento, el Secretario de Educación deberá tomar las medidas correctivas necesarias siguiendo el procedimiento que aquí se dispone. Podrá considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones. Tanto las suspensiones de empleo y sueldo como las destituciones deberán notificarse por escrito mediante correo certificado a los maestros o empleados del Sistema de Educación Pública indicándoles las alegaciones de hecho en las cuales se fundamentan.

El Secretario de Educación podrá destituir o suspender de empleo y sueldo cualquier maestro o empleado del Sistema de Educación Pública por justa causa y previa formulación de cargos por escrito, previa celebración de una vista administrativa informal".